**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SUSAN CHAMBERLAN and HENRY
FOK,
            *Plaintiffs-Respondents,*

v.

FORD MOTOR COMPANY,
            *Defendant-Petitioner.*

No. 04-80074

D.C. No.
CV-03-02628-CW

OPINION

Appeal from the United States District Court
for the Northern District of California
Claudia Wilken, District Judge, Presiding

Submitted March 23, 2005*
San Francisco, California

Filed March 31, 2005

Before: Edward Leavy, M. Margaret McKeown, and
Marsha S. Berzon, Circuit Judges.

Per Curiam Opinion

---

*The panel unanimously finds this case suitable for decision without
oral argument. Fed. R. App. P. 34(a)(2).

## COUNSEL

Brian C. Anderson, Matthew M. Shors, and Michael E. Stamp, O'Melveny & Myers, Washington, D.C., for the defendant-petitioner.

Suzanne Solomon and Michael F. Ram, Levy, Ram & Olson, San Francisco, California, for the plaintiffs-respondents.

## OPINION

PER CURIAM:

Federal Rule of Civil Procedure 23(f) permits a discretionary interlocutory appeal from a district court order denying or granting a class action certification. Although other circuits have explored the contours of the rule, we have not. We take this opportunity to identify for the first time the criteria we will consider in evaluating whether to permit an interlocutory appeal under Rule 23(f).

We begin with the premise that Rule 23(f) review should be a rare occurrence. We adopt the principles justifying review that are set out in the Advisory Committee Notes—the presence of a death knell situation for either party absent review and the presence of an unsettled and fundamental issue of law related to class actions—along with an additional criterion, manifest error in the district court's certification decision. Employing these guidelines in the present case, we conclude that the application for permission to appeal should be denied.

### BACKGROUND

Plaintiffs Susan Chamberlan and Henry Fok ("Class Plaintiffs") filed a class action lawsuit in state court against Ford Motor Company ("Ford") and several John Does, alleging that Ford knowingly manufactured, sold, and distributed automobiles containing a defective engine part, in violation of the California Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*[1] The action was removed to

---

[1]The CLRA makes illegal various specified "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person

federal court and the district court certified a plaintiff class of Ford automobile owners.

The engine parts at issue are plastic intake manifolds that Ford used in some, but not all, of its automobiles. The manifold distributes air to the engine's cylinders, where the air mixes with fuel and ignites to power the engine. The manifold includes water crossover tubes that distribute coolant from one side of the engine to the other, and then to the radiator. Plastic manifolds, particularly the plastic water crossover component, are allegedly more likely to crack and cause coolant leaks than the aluminum intake manifolds Ford used in some of its cars.

According to Class Plaintiffs, as early as 1995, Ford became aware that the plastic manifolds were prone to cracking. Ford began an investigation of the plastic manifolds and redesigned the part several times, but was unable to resolve the cracking problem. In 1999, Ford implemented several notification programs to alert owners to potential problems caused by plastic manifolds. According to Class Plaintiffs, these programs covered only a fraction of the affected vehicles, and Ford concealed the defective nature of the plastic manifolds from consumers. Ford discontinued use of plastic manifolds in 2002.

After the case was removed to federal court, Class Plaintiffs moved for class certification. Ford opposed certification on the grounds that the facts pertaining to the causes of action differ depending on which vehicle the claimant owns, when that vehicle was produced, and what each individual buyer's

---

in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). For example, the CLRA proscribes "[r]epresenting that goods or services have . . . characteristics, ingredients, uses, benefits, or qualities which they do not have," Cal. Civ. Code § 1770(a)(5), and "[r]epresenting that goods or services are a particular standard, quality or grade . . . if they are of another." Cal. Civ. Code § 1770(a)(7).

expectations were regarding the durability of the intake manifold on the vehicle. Ford argued that these claimant-specific issues predominate over whatever common issues might exist. Ford also sought to defeat certification on the ground that certain potential defenses—such as the CLRA's three-year statute of limitations period—might apply only to some individuals within the proposed class. Finally, Ford argued that Class Plaintiffs had not shown how the class trial could be managed to account for these potential distinctions.

The district court granted the certification motion and certified a class consisting of:

> All consumers residing in California who currently own, or paid to repair or replace the plastic intake manifold in any of the following cars: 1996-2001 model year Mercury Grand Marquis, 1998-2001 model year Ford Mustangs, 2002 model year Ford Explorers, 1996-2001 model year Ford Crown Victorias, or 1996-2001 Lincoln Town Cars.

> Excluded from the Class are (1) anyone to whom Ford has provided an extended warranty for her intake manifold; (2) the judge to whom this case is assigned and any member of the judge's immediate family; and (3) anyone who suffered personal injury related to Ford's plastic water crossover.

The district court found that all four prerequisites of Rule 23(a) for class certification had been met.[2] The district court

---

[2]Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

further held that the requirement of subsection (b)(3),[3] that common questions predominate over individual questions, was satisfied. The court identified the following common questions: (1) whether the design of the plastic intake manifold was defective; (2) whether Ford was aware of alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated the CLRA. Finally, the district court found that few potential class members could afford to undertake individual litigation against Ford, making a class action a superior way to resolve these claims.

Ford filed a timely petition asking this court to allow an immediate, interlocutory appeal from the district court's certification order under Rule 23(f). Ford challenges the rigor of the district court's analysis, particularly with respect to whether common issues predominate over individual ones. Ford additionally faults the district court for neglecting to address CLRA's elements and affirmative defenses and for failing to establish a trial plan. In its supplemental brief, Ford complains that the certification creates tremendous pressure to settle, even though it believes the district court order is manifestly incorrect and likely to be reversed or vacated.

## DISCUSSION

### I.  THE CONTOURS OF RULE 23(F)

[1] Federal Rule of Civil Procedure 23(f), which became effective in 1998, provides that:

> [a] court of appeals may in its discretion permit an

---

[3]Rule 23(b)(3) requires, as a condition precedent to class certification, that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

appeal from an order of a district court granting or denying class action certification under this rule if application is made to it within ten days after entry of the order. An appeal does not stay proceedings in the district court unless the district judge or the court of appeals so orders.

Fed. R. Civ. P. 23(f). When, as here, an appeal falls within the court of appeals' discretion, a party must file a petition for permission to appeal. Fed. R. App. P. 5(a)(1).

The Advisory Committee's Notes provide a good starting point for exploring the contours of Rule 23(f). The drafters intended the court of appeals to enjoy "unfettered discretion" to grant or deny permission to appeal based on "any consideration that the court of appeals finds persuasive." Fed. R. Civ. P. 23, Advisory Committee Notes to 1998 Amendments, Subdivision (f). The Committee contemplated that "[t]he courts of appeals will develop standards for granting review that reflect the changing areas of uncertainty in class litigation." *Id.*

**[2]** Despite the wide open grant of discretion, and the absence of any articulated standards in the rule itself, the drafters identified three situations in which an appeal under Rule 23(f) would most likely be appropriate. The first occurs when a denial of certification effectively ends the litigation for the plaintiff. A plaintiff who is denied certification might be left with only one path to appellate review: proceeding to a final judgment on the merits of an individual claim that, without the class, is worth far less than the cost of litigation. *Id.* The second situation arises when a grant of certification may "force a defendant to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability." *Id.* In both situations, the certification "sounds the death knell of the litigation." *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999). The drafters identified as a third circumstance one in which the certification decision turns on a novel or unsettled question of law.

These criteria reflect the dual purposes of Rule 23(f), which the First Circuit aptly summarized. First, the rule provides a "mechanism through which appellate courts, in the interests of fairness, can restore equilibrium when a doubtful class certification ruling would virtually compel a party to abandon a potentially meritorious claim or defense before trial." *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293 (1st Cir. 2000). And second, "the rule furnishes an avenue, if the need is sufficiently acute, whereby the court of appeals can take earlier-than-usual cognizance of important, unsettled legal questions, thus contributing to both the orderly progress of complex litigation and the orderly development of law." *Id.*

Relying on the purposes of the rule and the guidance provided by the Advisory Committee's Notes, several of our sister circuits have examined the appropriate scope of Rule 23(f). In the first decision to thoroughly consider Rule 23(f), the Seventh Circuit articulated fundamental principles that have been echoed by other circuits. *Blair,* 181 F.3d at 834-35.

In *Blair*, the Seventh Circuit rejected the adoption of a bright-line rule for granting review and instead identified three general categories of cases in which appellate review under Rule 23(f) would be appropriate. These categories essentially mirror the three situations identified in the Committee Notes. First are those cases where "denial of class status sounds the death knell of the litigation, because the representative plaintiff's claim is too small to justify the expense of litigation." *Id.* at 834. Second are cases where a grant of certification sounds the death knell of the litigation for the defendant because the grant "can put considerable pressure on the defendant to settle" independent of the merits of the plaintiffs' claims. *Id.* Third are cases in which an interlocutory appeal "may facilitate the development of the law" of class actions because such actions often settle or are resolved without clear resolution of procedural matters. *Id.* at 835. Although some circuits have elaborated on the three categories listed in *Blair*, each of the circuits that has considered

Rule 23(f) agrees that *Blair* identifies the core situations when interlocutory review is most appropriate. *See, e.g., In re Delta Air Lines*, 310 F.3d 953, 960 (6th Cir. 2002); *In re Lorazepam & Clorazepate Antitrust Litig.*, 289 F.3d 98, 105 (D.C. Cir. 2002); *Newton v. Merrill Lynch, Pierce, Fenner, & Smith*, 259 F.3d 154, 165 (3rd Cir. 2001); *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 145-46 (4th Cir. 2001); *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1273 (11th Cir. 2000); *Mowbray*, 208 F.3d at 293.

The most notable modification of the *Blair* trilogy has been the development of a fourth category of cases in which review is warranted: when the district court's decision is manifestly erroneous. The Eleventh Circuit initiated the evolution of the manifest error factor by noting that when the certification decision is obviously wrong, Rule 23(f) review "may be warranted even if none of the other factors supports granting the Rule 23(f) petition." *Prado-Steiman*, 221 F.3d at 1275. Other circuits have subsequently announced that interlocutory review of a certification decision is appropriate based solely on a manifest error. *In re Lorazepam*, 289 F.3d at 105; *Newton*, 259 F.3d at 164; *Lienhart*, 255 F.3d at 145.

Some circuits also have modified the third *Blair* category—unsettled questions of law—in order to limit the filing of meritless Rule 23(f) petitions. The First Circuit was concerned that the unsettled law situation would foster too many fruitless Rule 23(f) applications because "a creative lawyer almost always will be able to argue that deciding her case would clarify some 'fundamental' issue." *Mowbray*, 208 F.3d at 294. To limit review of cases in which a novel legal issue is claimed, *Mowbray* restricted review to issues that are both important to the particular litigation and likely to escape effective review after the conclusion of the trial. *Id.* Other circuits have followed suit by confining the third category to novel legal questions that are important to class action law and likely to evade effective review after the completion of

the case. *In re Lorazepam*, 289 F.3d at 105; *Sumitomo*, 262 F.3d at 140.

The Committee Notes provide the essential guidelines for determining when interlocutory appellate review is appropriate under Rule 23(f). Although Rule 23(f) expands opportunities to appeal certification decisions, the drafters intended interlocutory appeal to be the exception rather than the rule. "The note reflects, on balance, a reluctance to depart from the traditional procedure in which claimed errors" are reviewed only after a final judgment. *In re Lorazepam*, 289 F.3d at 104-05. Interlocutory appeals are generally disfavored because they are "disruptive, time-consuming, and expensive." *Mowbray*, 208 F.3d at 294. These appeals add to the heavy workload of the appellate courts, require consideration of issues that may become moot, and undermine the district court's ability to manage the class action. *Prado-Steiman*, 221 F.3d at 1276-77.

Like other circuits that have considered the issue, we are of the view that petitions for Rule 23(f) review should be granted sparingly. We nonetheless recognize that there are rare cases in which interlocutory review is preferable to end-of-the-case review.

**[3]** Bearing in mind that many class certification decisions "present familiar and almost routine issues that are no more worthy of immediate appeal than many other interlocutory rulings," Fed. R. Civ. P. 23(f), Advisory Committee Notes to 1998 Amendments, we adopt the following guidelines for consideration of Rule 23(f) petitions. Review of class certification decisions will be most appropriate when: (1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is

likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous. This framework most closely approximates the standard adopted by the D.C. Circuit in *In re Lorazepam.* 289 F.3d at 99-100, 105.

**[4]** Unlike the courts in *Mowbray* and *Blair*, we view interlocutory review as warranted when the district court's decision is manifestly erroneous—even absent a showing of another factor. We see no reason for a party to endure the costs of litigation when a certification is erroneous and inevitably will be overturned. The error in the district court's decision must be significant; bare assertions of error will not suffice. Any error must be truly "manifest," meaning easily ascertainable from the petition itself. If it is not, then consideration of the petition will devolve into a time consuming consideration of the merits, and that delay could detract from planning for the trial in the district court.

The kind of error most likely to warrant interlocutory review will be one of law, as opposed to an incorrect application of law to facts. A manifest error of law will be more obvious and susceptible to review at an early stage than an error that must be evaluated based on a well developed factual record. *Prado-Steiman*, 221 F.3d at 1275 & n.9.

The parties have urged us to adopt a "sliding scale" approach to reviewing Rule 23(f) petitions, in which a particularly weak district court decision would reduce the showing required for other factors. *See, e.g.*, *Lienhart*, 255 F.3d at 145-46. We decline to adopt such an approach. Instead, we simply set forth factors for consideration and do not circumscribe the court's evaluation of the strength of showing required for any individual factor.

The three categories we outline do not constitute an exhaustive list of factors and are not intended to circumscribe the broad discretion granted the courts of appeal by Rule

23(f). These factors are merely guidelines, not a rigid test. When considering whether to allow interlocutory appeals, we will avoid "both micromanagement of complex class actions as they evolve in the district court and inhibition of the district court's willingness to revise the class certification for fear of triggering another round of appellate review." *In re Lorazepam*, 289 F.3d at 105. We underscore that the decision to permit interlocutory appeal is, at bottom, a discretionary one. We acknowledge the possibility that a petition that does not fit within any of the foregoing situations may be worthy of interlocutory appeal. Ordinarily, however, a case warranting review pursuant to Rule 23(f) must come within one or more of the specified categories.

## II.   APPLICATION OF THE CRITERIA TO FORD'S PETITION

Having established the criteria under which Rule 23(f) review is appropriate, we turn to the specific facts of Ford's petition.

Ford attempts to fit this case into the death knell category by complaining that the class certification creates immense pressure to settle. Ford claims that it is being forced into the prospect of an "all or nothing" class trial in which well over one hundred thousand class members will be collectively seeking an award approaching or exceeding one hundred million dollars in damages and attorneys' fees.

[5] When evaluating whether the certification would end the litigation for Ford, we consider whether Ford has sufficiently demonstrated "that the damages claimed would force a company of its size to settle without relation to the merits of the class's claims." *In re Lorazepam*, 289 F.3d at 108. Ford has made no showing that it lacks the resources to defend this case to a conclusion and appeal if necessary or that doing so would "run the risk of ruinous liability." Fed. R. Civ. P. 23, Advisory Committee Notes to 1998 Amendments, Subdivision (f). Significantly, Ford's claims are conclusory and are

not backed up by declarations, documents, or other evidence demonstrating potential liability or financial condition.

We acknowledge that the potential recovery here may be "unpleasant to a behemoth" company, *Mowbray*, 208 F.3d at 294, but it is hardly terminal. Although the instant lawsuit is definitely more than a mere unpleasantry, the impact of the class certification alone does not support an appeal. Further, the district court did not abuse its discretion in finding that, absent a class action, Class Plaintiffs would have no meaningful redress against Ford.

**[6]** In connection with the death knell factor, we normally would look for error in the certification order. *See Blair*, 181 F.3d at 835 (recognizing the futility in granting review of a class certification decision that is "impervious to revision," even if the decision effectively terminates the litigation). Ford has not, however, sufficiently demonstrated that the class certification will be the death of this litigation, so we do not address whether the order is erroneous under this factor.

**[7]** Ford next attempts to place its petition under the unsettled question of law umbrella by arguing that it is unclear whether *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), overrules *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996). Ford's argument boils down to a contention that *Hanlon* permits a cursory analysis of class certification whereas *Valentino* requires rigorous review. Ford misreads the two cases by overlooking the factual differences between them. The cases are not in conflict, nor do they indicate that there is an unsettled question of law.

In a decision that pre-dates both *Valentino* and *Hanlon*, the Supreme Court emphasized that classes may be certified only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982). In the same decision, the Court acknowledged that "[s]ometimes the

issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim . . . ." *Id.* at 160. The Supreme Court thus recognized over twenty years ago that a rigorous analysis does not always result in a lengthy explanation or in-depth review of the record.

Hanlon was a case in which the issues were so plain and the analytical framework so clear that the record provided a sufficient basis for the appellate court to make a decision, even though the district court's findings were conclusory. *Hanlon*, 150 F.3d at 1023. The court noted that "[t]here is no value to be served in remanding this case for the entry of further self-evident findings." *Id.*

*Valentino* was a different kind of case, one that required deeper probing. In *Valentino*, the issues were not apparent from the face of the record. 97 F.3d at 1234 ("It is *not clear* that Plaintiffs have met either the typicality or adequacy of representation requirement") (emphasis added). Superficial recitation of the factors was not enough; thus, in *Valentino*, the case was remanded so that the district court could provide the details necessary to evaluate the certification decision. *Hanlon* and *Valentino* resulted in different outcomes, not because they are in conflict with one another, but because they rest on different facts. It has long been established that some cases simply require more explication than others. *See Falcon*, 457 U.S. at 16. We therefore decline Ford's invitation to identify an intra-circuit split where none exists.[4]

---

[4]We decline Ford's suggestion that the district court's failure to adopt a trial plan or to articulate how the class action would be tried was an abuse of discretion. *Valentino* does not stand for this proposition. Notably, *Valentino* was decided in 1996, before Rule 23(f) became effective. Nothing in the Advisory Committee Notes suggests grafting a requirement for a trial plan onto the rule. In any event, we note that the Class Plaintiffs in this case did submit a trial plan, which was among the pleadings considered by the district court.

Ford's final argument for review is that the grant of certification was manifestly erroneous, for essentially the same reason alleged to demonstrate an unsettled issue of law—that the district court's analysis was too cursory to satisfy this court's requirement for a rigorous analysis. Ford is particularly concerned that the district court "egregiously" dispensed with Rule 23(b)(3)'s predominance requirement in a single sentence. This characterization is somewhat misleading because the district court's "sentence" was a litany of six examples that, in effect, each amounted to a separate thought or sentence.

When an error is alleged, we generally will permit an interlocutory appeal only when the certification decision is manifestly erroneous and virtually certain to be reversed on appeal from the final judgment. It is difficult to show that a class certification order is manifestly erroneous unless the district court applies an incorrect Rule 23 standard or ignores a directly controlling case. *Prado-Steiman*, 221 F.3d at 1275 & n.9. Class certification decisions rarely will involve legal errors, however, simply because class actions typically involve complex facts that are unlikely to be on all fours with existing precedent. *Id.*

**[8]** The district court's decision in this case is typical in that it presents no error of law and is not manifestly erroneous. Although the district court was succinct, it provided detailed, substantive examples of the common issues: (1) whether the design of the plastic intake manifold was defective; (2) whether Ford was aware of alleged design defects; (3) whether Ford had a duty to disclose its knowledge; (4) whether it failed to do so; (5) whether the facts that Ford allegedly failed to disclose were material; and (6) whether the alleged failure to disclose violated the CLRA. The common issues here are plain enough that no further explanation is required to justify the district court's decision. *See Hanlon*, 150 F.3d at 1023 (although the district court was almost conclusory, the issues were plain and the analysis clear, making

additional analysis unnecessary). We are not departing from the principle that the trial court should rigorously analyze the facts of a class action to ensure that it meets the requirements for certification. *Falcon*, 457 U.S. at 161. We simply hold that in this case, the issues were readily apparent. Requiring the district court to expand its analysis would produce nothing more than a lengthy explanation of the obvious.

Ford seeks to identify an error of law by pointing out that the district court did not cite *Valentino*. But the district court had no reason to cite *Valentino* because that case is not a directly controlling precedent. In *Valentino*, the district court merely restated the requirements for class certification without reciting any facts or reasons that the requirements had been met. 97 F.3d at 1234-35. In contrast, the district court here was far from silent. It affirmatively found that a common nucleus of facts and potential legal remedies dominate this litigation, such as whether Ford was aware of alleged design defects and whether Ford had a duty to disclose its knowledge and failed to do so. That the district court provided cogent, if brief, reasoning differentiates this case from *Valentino*. The district court's failure to cite *Valentino* can hardly be classified as any error, let alone manifest error.

**[9]** The application for permission to appeal the district court order granting class certification is **DENIED.**