**Daniel GORDON, et al., on behalf of themselves and all others similarly situated, Respondents,**

v.

**MICROSOFT CORPORATION, Petitioner, Appellant.**

**No. C8–01–701.**

Supreme Court of Minnesota.

June 13, 2002.

---

Frederick W. Morris, Robert L. DeMay, David R. Crosby, Leonard, Street and Deinard, Minneapolis, MN, David B. Tulchin, Michael Lacovara, Justin J. Daniels, Sullivan & Cromwell, New York City, Charles B. Casper, Montgomery, McCracken, Walker & Rhoads, L.L.P., Philadelphia, PA, for Appellant; Steven W. Berman, Hagens Berman, Seattle, WA, Thomas W. Burt, Richard Wallis, Steven J. Aeschbacher, Microsoft Corp., Redmond, WA, of counsel.

Richard M. Hagstrom, Terrance C. Newby, Zelle, Hoffman, Voelbel, Mason & Gette, L.L.P., Minneapolis, MN, Alice McInerney, Daniel A. Hume, Kirby McInerney & Squire, L.L.P., New York City, Thomas M. Sobol, Leiff, Cabraser, Heimann & Bernstein, L.L.P., Boston, MA, for Respondents.

## OPINION

PAUL H. ANDERSON, Justice.

Microsoft Corporation appeals from a decision of the Minnesota Court of Appeals denying discretionary review under Minn. R. Civ.App. P. 105.01. More particularly, Microsoft asserts that the court of appeals improperly denied review of a district court order granting class certification under Minn. R. Civ. P. 23. We affirm.

On May 3, 2000, respondent Daniel Gordon commenced an action against Microsoft in Hennepin County District Court on behalf of himself and others similarly situ-

ated. Gordon claimed that Microsoft violated Minnesota's antitrust law. In the complaint, Gordon alleged that he and others similarly situated purchased Microsoft operating system software when they obtained a license for the use of MS–DOS, Windows 95, Windows 98, and other Microsoft software. Gordon claimed that he and others similarly situated were damaged because they paid a higher price for the software than they would have paid in a competitive market absent Microsoft's alleged monopoly and anti-competitive practices. Gordon asserted that the higher prices were the direct result of Microsoft charging artificially-inflated prices to its distributors, who in turn passed the overcharges on to consumers. In September 2000, Gordon moved the court for class certification under Minn. R. Civ. P. 23. In January 2001, while this motion was pending, Gordon moved the court to amend his complaint by expanding the factual allegations and adding an additional class of purchasers as well as named plaintiffs. The court granted this motion and Gordon filed an amended complaint in February 2001, along with four other individually named plaintiffs (hereinafter referred to collectively as respondents).

Microsoft does not sell or license its operating system software directly to consumers and instead uses a multiple-level system of distributors from whom consumers ultimately obtain Microsoft products. It is undisputed that under this distribution system, respondents and other consumers similarly situated are "indirect purchasers" of Microsoft products. The parties agree that because respondents are indirect purchasers they must show that any alleged overcharge to Microsoft's distributors was passed on to them. Respondent Gordon attempted to show that the alleged overcharges were passed on to respondents by submitting an affidavit by

Dr. Keith Leffler, an authority on antitrust and economics. In his affidavit, Dr. Leffler purported to establish a workable economic model and methodology to establish class-wide impact and damages. Microsoft disputed the accuracy of Leffler's model and its applicability to the facts of this case.

The district court granted respondents' motion to certify the class. The court noted that Dr. Leffler's methodology was hotly disputed by the parties, but found that at this preliminary stage in the proceeding the economic model appeared adequate for use at trial. The court supported its order with a 25–page memorandum specifically discussing and addressing each of Microsoft's arguments against granting the motion.

Microsoft petitioned the court of appeals for discretionary review of the class certification order. It did so under Minn. R. Civ.App. P. 105.01. Microsoft also requested that the court of appeals certify the issue to our court for accelerated review. The court of appeals declined to exercise discretionary review. The court concluded that discretionary review was not appropriate because (1) denial of class status would not obviate all proceedings below because individual claims would remain for resolution, and (2) the specific issue regarding the calculation of damages was not a legal issue of broad applicability to the state. The court of appeals also declined to certify the issue to our court for accelerated review because it concluded that the issue was moot in light of its refusal to grant discretionary review.

We granted Microsoft's subsequent petition for further review and we specifically ordered the parties to brief the issue of whether the court of appeals applied the proper standard for the exercise of discretionary review.[1] Given the scope of the

1. In addition to the petition for further re-      view, Microsoft alleges that it also filed a

case before us and the potential issues that it might present, it is important to understand that Microsoft only petitioned from the court of appeals' order denying discretionary review of the district court's order.[2] It did not petition for review of the district court's order granting class certification to respondents. Therefore, the narrow issue before us is whether the court of appeals acted properly when it denied Microsoft's request for discretionary review.[3] To resolve this issue, we must determine (1) what standard of review we use to review court of appeals' decisions whether to exercise discretionary review of an interlocutory order under Minn. R. Civ.App. P. 105.01, and (2) what standards the court of appeals should use in deciding whether to exercise discretionary review under Rule 105.01.

reviewing a court of appeals' decision to grant or deny discretionary review of an interlocutory order under Minn. R. Civ. App. P. 105.01. However, the appropriate standard of review is evident given the nature of Rule 105.01. The court of appeals' power to grant review under Rule 105.01 is exercised *at the discretion* of the court of appeals. Minn. R. Civ.App. P. 105.01 ("the Court of Appeals *may* allow an appeal from an order not otherwise appealable") (emphasis added). Therefore, it follows that we should review the court of appeals' decision for an abuse of discretion. Accordingly, we conclude that an abuse of discretion standard applies to our review of court of appeals' decisions whether to exercise discretionary review under Minn. R. Civ.App. P. 105.01.

## I.

■ We have not previously articulated the standard of review to be used when

## II.

■ Whether the court of appeals abused its discretion by denying Micro-

petition for accelerated review with this court. Although the record indicates that a petition for accelerated review was served on respondents, there is no record that any petition for accelerated review was filed with the clerk of appellate courts.

2. Microsoft specifically petitioned for review of the court of appeals' decision to deny discretionary review, but Microsoft's petition and respondents' brief in opposition to the petition concentrated on the merits of the district court order. Therefore, we ordered the parties to brief the issue before this court, which is: What standards should the court of appeals use in determining whether to exercise discretionary review under Minn. R. Civ. App. P. 105.01?

3. In Microsoft's petition for review of the decision of the court of appeals, Microsoft also raised the issue whether the district court misinterpreted this court's opinion in *Group Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (Minn.2001). Microsoft argued that the district court cited *Group Health* to stand for the proposition that the standards

for class certification and manageability under Rule 23 had been modified. However, respondents have conceded that *Group Health* did not modify the standard and, indeed, it appears that the district court did not cite the *Group Health* case as relaxing the standard for class certification under Rule 23. Instead, respondents point out that the district court only cited *Group Health* to show that Minnesota courts broadly construe remedial statutes.

The only apparent connection between *Group Health* and class action certification is that *Group Health*, in the context of a certified question regarding consumer protection, rejected the holdings of two federal district court cases that denied class certification. *Group Health*, 621 N.W.2d at 14–15 (citing *Thompson v. Am. Tobacco Co. Inc.*, 189 F.R.D. 544, 553 (D.Minn.1999); *Parkhill v. Minn. Mut. Life Ins. Co.*, 188 F.R.D. 332, 345 (D.Minn.1999)). To the extent that the district court cited *Group Health* to stand for the proposition that standards for class certification under Rule 23 have been lowered, it was in error. *Group Health*, 621 N.W.2d at 14–15.

soft's petition for discretionary review depends partly on whether there are guidelines that the court of appeals should follow when making a decision to exercise discretionary review of interlocutory orders under Minn. R. Civ.App. 105.01. Generally, interlocutory appeals are disfavored and, ordinarily, only "final judgments" are appealable. *See Emme v. C.O.M.B.*, 418 N.W.2d 176, 178–79 (Minn.1988). However, we have recognized exceptions to this general rule. *Id.* Class certification orders do not meet any exception and are not appealable as of right. *See In re Objections and Defenses to Real Property Taxes for the 1980 Assessment,* 320 N.W.2d 729, 731 (Minn.1982) (holding no appeal as of right from order denying class certification). Nevertheless, in circumstances when a specific exception does not apply and there is a compelling reason for immediate appeal, parties may petition for discretionary review under Minn. R. Civ. App. P. 105.01. *Emme,* 418 N.W.2d at 179. Rule 105.01 provides that: "Upon the petition of a party, in the interests of justice the Court of Appeals may allow an appeal from an order not otherwise appealable * * *."

We have previously granted or denied discretionary review of interlocutory orders based on the specific facts of cases and thus prior case law provides little basis for generalization or broad rulemaking. *See, e.g., Emme,* 418 N.W.2d at 179 (noting the availability of discretionary review in

"rare" cases); *Price v. Amdal,* 256 N.W.2d 461, 462 n. 1 (Minn.1977) (granting discretionary review because of "troublesome and vexing question").[4] Further, many of these cases were decided before the court of appeals was created and thus present different policy considerations for the appropriate exercise of discretionary review. Therefore, it is difficult to extract actual rules or guidelines from prior case law. Nevertheless, we are able to make two observations from these cases. First, discretionary review has been exercised under Rule 105.01 and its predecessors both by this court and the court of appeals, but our court has yet to develop general standards, or indicate that there are no standards, to guide the court of appeals when exercising such discretionary review under Rule 105.01. Second, the fact that there have been no standards developed or rules promulgated may be an indication in itself that the power of discretionary review in the interests of justice was meant to be exercised in the pure discretion of the court of appeals, without standards or guidelines or criteria that limit its discretion.

None of the parties advocate a purely discretionary standard. Respondents and the court of appeals cite *Emme* and *Price* for the proposition that discretionary review under Rule 105.01 is appropriate when (1) reversal would obviate all proceedings in the district court and (2) the ruling involves a legal issue of broad application.[5] However, *Emme* does not stand

---

4. *See also In re Contest of General Election,* 264 N.W.2d 401, 402 n. 1 (Minn.1978) (granting review because issue was of general importance); *Univ. Cmty. Props., Inc. v. Norton,* 311 Minn. 18, 21, 246 N.W.2d 858, 860 (1976) (granting review because review granted in similar case); *Weinzierl v. Lien,* 296 Minn. 539, 540, 209 N.W.2d 424, 424 (1973) (refusing review when record "amply sustains" the district court's position); *Miyoi v.*

*Gold Bond Stamp Co. Employees Ret. Trust,* 293 Minn. 376, 378, 196 N.W.2d 309, 310 (1972) (refusing to review when irreparable harm would not result from order).

5. In addition to the order opinion in this case, the court of appeals has cited *Emme* and *Price* before for the same propositions. *Larson v. New Richland Care Ctr.,* 538 N.W.2d 915, 919 (Minn.App.1995), *rev. granted* (Minn. Dec. 20,

for these propositions and has been misconstrued by respondents and the court of appeals. *Emme* dealt with interlocutory appeals certified as important and doubtful under Minn. R. Civ.App. P. 103.03(h),[6] not discretionary review under Rule 105.01. *Emme*, 418 N.W.2d at 178–79. Additionally, even though *Emme* did discuss termination of all further proceedings in the district court as a factor in its analysis, we have since determined that the "termination" factor was not a prerequisite, but simply part of the balancing test. *Jostens, Inc. v. Federated Mut. Ins. Co.*, 612 N.W.2d 878, 883–84 (Minn.2000). Regardless, neither *Emme* nor *Jostens* dealt with an appeal under Rule 105.01 and, to the extent that the court of appeals cited those cases for those propositions, it was in error.

On the other hand, *Price* has been cited correctly and did involve discussion of an appeal under Rule 105—albeit only in a footnote. *Price*, 256 N.W.2d at 462 n. 1. Although *Price* did not discuss termination of proceedings as a factor in granting discretionary review, the court in *Price* did state that the legal question was "troublesome and vexing," implying that the legal question presented was of broad applicability and that this broad applicability was an appropriate reason to grant discretion-

ary review. *See id.* at 462 n. 1. However, *Price* did not indicate that broad applicability was a required criterion or prerequisite to discretionary review under Rule 105.01; instead, it only implied that broad applicability was a permissible circumstance in which to exercise review.[7]

▮ Although Minn. R. Civ.App. P. 105.01 is the relevant rule here, Microsoft does not focus on general standards for discretionary review under Rule 105.01, but instead it argues that we should adopt the federal standards for discretionary appellate review of *class certification motions* in particular. Respondents respond by arguing that the federal standards should not apply and that Minnesota's existing "in the interests of justice" case law, in particular *Emme* and *Price*, should be used instead. But as noted earlier, under our case law there is no appeal of right from an order on a class certification motion. *See In re Objections*, 320 N.W.2d at 731 (holding no appeal as of right from order denying class certification).[8] The only avenue available to appeal a class certification order is discretionary review under Rule 105.01. *In re Objections*, 320 N.W.2d at 731, n. 4.

Because the case law in Minnesota regarding Rule 105.01 is not very helpful and

1995), *rev. denied* (Minn. Mar. 4, 1997); *see also O'Shaughnessy v. Smuckler Corp.*, 543 N.W.2d 99, 101 (Minn.App.1996) (citing Rule 105.01 and *Emme* and then explaining that discretionary review was granted because the trial court's order fit within these two factors).

6. The rule allowing the court of appeals to take an appeal from a case certified by the trial court as important and doubtful is now Minn. R. Civ.App. P. 103.03(i).

7. One other similar case from this court stands for the same proposition—that cases presenting an important legal issue of broad applicability are appropriate for discretionary

review under Rule 105.01. *See In re Contest of General Election*, 264 N.W.2d at 402 n. 1 (granting discretionary review because issue was of general importance). Importantly, this case does not indicate that this is a requirement for the exercise of discretionary review.

8. *See also Millett v. Atlantic Richfield Co.*, 760 A.2d 250, 254–55 (Me.2000) (discussing state approaches to appealability of class certification orders). The Maine court in *Millett* concludes that the majority rule among the states is that interlocutory appeals from class certification decisions are not allowed as a matter of right, absent authorization by specific state statute or appellate rule. 760 A.2d at 255.

because the federal jurisprudence in this area is recent and well-developed, we first look to federal law for guidance. Drawing from federal law is especially appropriate because the Federal Rules of Civil Procedure provide for discretionary appellate review of class certification orders just as our Rule 105.01 allows discretionary review of interlocutory orders generally. Under the 1998 amendments to Fed. R.Civ.P. 23, federal courts of appeals were specifically authorized to exercise discretionary review of district court orders granting or denying class certification. Fed.R.Civ.P. 23(f). The advisory committee note appended to Rule 23(f) directs federal courts of appeals to "develop standards for granting review" and goes into some detail regarding appropriate considerations. Fed.R.Civ.P. 23(f), advisory committee's note.

The United States Supreme Court has not issued a decision regarding whether a court of appeals has abused or appropriately exercised its discretion under Rule 23(f) in deciding whether to exercise discretionary review. However, some federal circuits have heeded the advisory committee's advice and have established somewhat uniform circumstances in which review is appropriate and should be exercised. To date, seven circuits have addressed this issue and, while there is agreement among those courts generally whether to exercise discretionary review, there is no consensus on the actual method.

The Seventh Circuit was the first circuit to conduct a detailed analysis of the new rule and explicate a standard under which discretionary review should be exercised. *Blair v. Equifax Check Services, Inc.*, 181 F.3d 832, 833 (7th Cir.1999). That court examined the purposes behind Rule 23(f) and used those purposes to determine the circumstances under which a court of appeals should grant discretionary review of orders granting or denying class certification. *Blair*, 181 F.3d at 834–35. The *Blair* court ultimately found three categories in which discretionary review should be granted: (1) when a questionable denial of class certification sounds a "death knell" for plaintiffs because the representative plaintiffs' claims are too small to pursue individually, (2) when a questionable grant of class certification is likely to pressure defendants into settlement, and (3) when an immediate appeal may facilitate development of the law. *Id.* With minor changes and elaboration from circuit to circuit, the categories listed in *Blair* are present in some form in the case law from each of the other six circuits that have subsequently addressed this issue.

The First Circuit was the next to address Rule 23(f) and essentially adopted the *Blair* analysis with a slightly narrower third category. *Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 293–94 (1st Cir.2000). In *Waste Management*, the court concluded that the third category should be restricted "to those instances in which an appeal will permit the resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself and likely to escape effective review if left hanging until the end of the case." *Id.* at 294 (footnote omitted).

Next, the Eleventh Circuit refined the *Blair/Waste Management* methodology by establishing five factors that elaborate on and clarify the earlier three-category analysis. *Prado–Steiman v. Bush*, 221 F.3d 1266, 1273–76 (11th Cir.2000). These five factors are as follows: (1) whether the district court's order is likely dispositive of the litigation by creating a "death knell" for either plaintiff or defendant; (2) whether petitioner has shown a substantial weakness in the class certification deci-

sion, such that the decision likely constitutes an abuse of discretion; (3) whether the appeal will permit resolution of an unsettled legal issue that is important to the particular litigation as well as important in itself; (4) the nature and status of the litigation before the district court; and (5) the likelihood that future events may make immediate appellate review more or less appropriate. *Id.* at 1274–76. One year later, the Fourth Circuit adopted the *Prado–Steiman* five-factor test with one slight elaboration. *Lienhart v. Dryvit Sys., Inc.,* 255 F.3d 138, 145–46 (4th Cir. 2001). In *Lienhart,* the court concluded that the second factor "operates on a sliding scale to determine the strength of the necessary showing regarding the other *Prado–Steiman* factors." *Id.*

The Third Circuit did not directly follow the progression of the earlier cases, but it still adopted parts of the original three *Blair* categories, although it emphasized that there may be other appropriate reasons for discretionary review and that the decision to grant review is ultimately within the discretion of the courts of appeal. *Newton v. Merrill Lynch,* 259 F.3d 154, 163–65 (3d Cir.2001). The Second Circuit was the next circuit to address this issue and is generally in agreement with the *Blair/Waste Management/Prado–Steiman* line of cases, but refined the prior analysis and compressed it into a two-criteria test. *Sumitomo Copper Lit. v. Credit Lyonnais Rouse,* 262 F.3d 134, 139–40 (2d Cir.2001). The Second Circuit requires petitioners to meet one of two criteria:

> [E]ither (1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) that the certification order implicates a legal question about

which there is a compelling need for immediate resolution.

*Id.* at 139.

The D.C. Circuit was the most recent circuit to address standards for exercising discretionary review under Rule 23(f). *In re Lorazepam & Clorazepate Antitrust Litigation,* 289 F.3d 98, 102–06 (D.C.Cir. 2002). The D.C. Circuit acknowledged the approaches taken by the other circuits and placed special emphasis on the advisory committee note appended to Rule 23(f), concluding that discretionary review under Rule 23(f) will ordinarily be appropriate in three circumstances: (1) when a questionable class certification decision, taking into account the district court's discretion over class certification, is the death knell for either the plaintiff or defendant; (2) when the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally, that is likely to evade end-of-the-case review; and (3) when the district court's class certification decision is manifestly erroneous. *In re Lorazepam,* 289 F.3d at 104–05.

■ We find the federal courts' analysis and articulation of various tests to be helpful, but instead of adopting any of the federal circuits' approaches wholesale, we will use a synthesis of the federal approaches. In particular, we adopt a non-exclusive list of factors for the court of appeals to consider in the future when making a determination whether to exercise discretionary review of a class certification decision under Minn. R. Civ.App. P. 105.01. We have extracted factors from the federal case law as well as some general principles. The three primary factors that indicate when discretionary review should be granted are as follows: (1) when a questionable denial of class certification is the "death knell" of plaintiffs' case because their individual claims are too small

to pursue individually; (2) when a questionable grant of class certification places inordinate pressure on the defendant to settle; and (3) whether the appeal will permit resolution of an important legal issue that is also important to the particular litigation.

■ The court of appeals should also be guided by certain other points about which the federal courts tend to agree. As a threshold matter, a determination of whether the district court's ruling on class certification is questionable should take into consideration the district court's discretion regarding class actions as well as the deferential appellate standard of review. *See, e.g., Blair,* 181 F.3d at 835 (noting that there is no reason for an interlocutory appeal of an order that is impervious to revision). The ultimate decision whether to grant review is within the discretion of a court of appeals and special, compelling circumstances may exist that require a different result than a pure application of the factors identified herein. *See, e.g., Sumitomo,* 262 F.3d at 139; *Prado–Steiman,* 221 F.3d at 1276. Most class certification decisions do not receive immediate appellate review and exercise of the discretionary power of review is the exception rather than the norm.[9] *See, e.g., Waste Management,* 208 F.3d at 294 (noting general policy disfavoring piecemeal appeals); *see also Emme,* 418 N.W.2d at 179 (noting Minnesota's policy disfavoring piecemeal appeals).

## III.

■ Having articulated factors to be considered by the court of appeals when deciding whether to grant discretionary review, we now apply those factors to the case before us. Here, whether the court of appeals abused its discretion when it denied review is made more difficult to determine because the court's short order opinion does not reveal much of that court's analysis or deliberation. Additionally, it is difficult to conclude that there was an abuse of discretion because, at the time of the court of appeals' decision, we had not yet provided guidance on this matter.

Nevertheless, we can glean from the court of appeals' order that it did consider at least parts of two factors in making its decision not to grant discretionary review. Citing *Emme* (albeit in error) and *Price,* the court indicated that review was denied because the legal issue was not of broad applicability to the state and because reversal would not obviate further proceedings. While the cases cited by the court are distinguishable, the considerations in and of themselves—broad applicability and obviation of further proceedings—are similar to two of our newly-articulated factors. First, the determination that a legal question is not of "broad applicability" is very similar to the analysis under the third factor—resolution of an important legal

9. We often look to case law from other states for guidance when our own jurisprudence is lacking, but here we choose to draw from federal law because it is more helpful. The majority rule among other states is that class certification orders are not immediately appealable absent state statutes or rules specifically authorizing appeals from certification orders or generally authorizing appeals from interlocutory orders. *See Millett,* 760 A.2d at 254–55 (discussing state approaches to appealability of class certification orders). Oth-

er states' law was less helpful to our analysis than federal law because the discretionary review statutes, rules, and judicial interpretations vary from state to state. *See, e.g., Nolan v. Sea Airmotive, Inc.,* 627 P.2d 1035, 1038 n. 7 (Alaska 1981) (discussing rules permitting discretionary review of interlocutory orders of substance and importance); *Reader v. Magma–Superior Copper Co.,* 108 Ariz. 186, 187, 494 P.2d 708, 709 (1972) (discussing statute permitting appeals from orders affecting substantial rights).

issue that is also important to the particular litigation. Second, when the court of appeals concluded that reversal of the order would not obviate further proceedings, it likely considered part of the first two factors—whether the plaintiffs will be unable to continue the litigation or whether the defendants will be pressured into settlement.

 We have in the past emphasized that the policy of our state is to avoid "piecemeal appeals" that interrupt and delay litigation. *Emme*, 418 N.W.2d at 179. This is such a case because Microsoft has effectively placed a hold on the litigation by pursuing an interlocutory appeal. Because we view this kind of disruption and delay with disfavor, appellate review of class certification orders should be an exception rather than the norm and the ultimate discretion whether to exercise discretionary review should lie with the court of appeals. *See, e.g., Waste Management,* 208 F.3d at 294; *Sumitomo,* 262 F.3d at 139. Further, because we view piecemeal appeals with disfavor, if possible we should resolve the issue here rather than remand.

The limited reasons given by the court of appeals in its order denying review were terse and somewhat problematic, especially the citation to *Emme.* Nevertheless, the court of appeals had before it the district court's order and that court's lengthy supporting memorandum of law. Further, the court of appeals did ultimately deny review based on criteria similar to our newly-articulated standards. Accordingly, given the court of appeals' broad discretion under Rule 105.01, our policy against piecemeal interlocutory appeals, and the fact that the court of appeals applied parts of two of our primary factors, we hold that the court of appeals did not abuse its discretion when it denied Microsoft's peti-

tion for discretionary review under Minn. R. Civ.App. P. 105.01.

Affirmed.